**BEFORE THE**
**UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **In re: TRANS UNION, LLC BALANCE AFTER DISCHARGE LITIGATION** | **MDL-__** |

**TRANS UNION, LLC'S BRIEF IN SUPPORT OF MOTION TO TRANSFER ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

**BUCHANAN INGERSOLL & ROONEY PC**

By: Samantha L. Southall
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
(215) 665-8700
samantha.southall@bipc.com

*Counsel for Trans Union, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................... 2

ARGUMENT ..................................................................................................................... 4

I.      Transfer is Appropriate Under 28 U.S.C § 1407 ................................................. 5

    A.      The Actions Involve Identical Factual Issues ...................................... 6

    B.      Transfer Will Serve The Convenience Of The Parties, Witnesses, And Counsel ................................................................................................ 9

    C.      Transfer Will Promote The Just And Efficient Conduct Of The Actions............. 10

    D.      The Actions Are Sufficiently Numerous And Complex To Warrant Consolidation ...................................................................................... 11

II.     The Northern District Of Illinois Is The Most Appropriate Transferee Forum ................. 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  273 F. Supp. 2d 1353 (J.P.M.L. 2003) ........................................................................9

*In re Aetna, Inc.*,
  609 F. Supp. 2d 1370 (J.P.M.L. 2009) ......................................................................12

*In re Air Crash Disaster at Huntington, W. Va. on Nov. 14, 1970*,
  342 F. Supp. 1400 (J.P.M.L. 1972) .............................................................................7

*In re Air West, Inc. Sec. Litig.*,
  384 F. Supp. 609 (J.P.M.L. 1974) ...............................................................................6

*In re Allura Fiber Cement Siding Prods. Liab. Litig.*,
  366 F. Supp. 3d 1365 (J.P.M.L. 2019) ......................................................................11

*In re Azek Bldg. Prods.*,
  999 F.Supp.2d 1366 (J.P.M.L. 2014) ........................................................................11

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
  148 F. Supp. 3d 1383 (J.P.M.L. 2015) ......................................................................13

*In re Bard IVC Filters Prods. Liab. Litig.*,
  122 F. Supp. 3d 1375 (J.P.M.L. 2015) ......................................................................13

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*,
  MDL No. 3040, 2022 WL 3134131 (J.P.M.L. Aug. 3, 2022) ...................................11

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
  509 F. Supp. 3d 1368 (J.P.M.L. 2020) ................................................................11, 12

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  289 F. Supp. 3d 1322 (J.P.M.L. 2017) ......................................................................13

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  325 F. Supp. 3d 1362 (J.P.M.L. 2018) ................................................................12, 13

*In re Fed. Election Campaign Act Litig.*,
  511 F. Supp. 821 (J.P.M.L. 1979) ...............................................................................6

*In re FedLoan Student Loan Servicing Litig.*,
  340 F. Supp. 3d 1377 (J.P.M.L. 2018) ......................................................................13

*In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec. Litig.*,
451 F. Supp. 995 (J.P.M.L. 1978)..........................................................................12

*In re Google Inc. Gmail Litig.*,
936 F. Supp. 2d 1381 (J.P.M.L. 2013)....................................................................12

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*,
220 F. Supp. 3d 1356 (J.P.M.L. 2016)....................................................................10

*In re Katz Interactive Call Processing Patent Litig.*,
481 F. Supp. 2d 1353 (J.P.M.L. 2007)...........................................................8, 9, 14

*In re Lehman Bros. Hldg., Inc.*,
598 F. Supp. 2d 1362 (J.P.M.L. 2009)......................................................................9

*In re Lenovo Adware Litig.*,
109 F. Supp. 3d 1366 (J.P.M.L. 2015)....................................................................13

*In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.*,
96 F.Supp.3d 1380 (J.P.M.L. 2015)....................................................................5, 11

*In re Neo Wireless, LLC, Pat. Litig.*,
MDL No. 3034, 2129058 (J.P.M.L. June 14, 2022)...............................................11

*In re Nickelodeon Consumer Privacy Litig.*,
949 F. Supp. 2d 1377 (J.P.M.L. 2013)....................................................................11

*In Re Nifedipine*,
266 F. Supp. 2d 1382 (J.P.M.L. 2003)......................................................................4

*In re Okun*,
609 F. Supp. 2d 1380 (J.P.M.L. 2009)....................................................................12

*In re Packaged Seafood Prods. Antitrust Litig.*,
148 F. Supp. 3d 1375 (J.P.M.L. 2015)....................................................................13

*In re Payless ShoeSource, Inc.*,
609 F. Supp. 2d 1372 (J.P.M.L. 2009)....................................................................12

*In re Pharmastem Therapeutics, Inc., Patent Litigation*,
360 F. Supp. 2d 1362 (J.P.M.L. 2005)......................................................................8

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
173 F. Supp. 2d 1377 (J.P.M.L. 2001)...................................................................6, 8

*In re Phenylpropanolamine Prod. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ...........................................................................5

*In re Propecia (Finasteride) Prod. Liab. Litig.*,
  856 F. Supp. 2d 1334 (J.P.M.L. 2012)...............................................................5

*In re Samsung Top-Load Washing Machine Mktg., Sales Practices and Prods.*
  *Liab. Litig.*,
  278 F. Supp. 3d 1376 (J.P.M.L. 2017)...............................................................8

*In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prods.*
  *Liab. Litig.*,
  466 F. Supp. 3d 1380 (J.P.M.L. 2020).............................................................12

*In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab.*
  *Litig.*,
  655 F. Supp. 2d 1367 (J.P.M.L. 2009)...............................................................9

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, & Prod. Liab.*
  *Litig.*,
  732 F. Supp. 2d 1375 (J.P.M.L. 2010).............................................................13

*In re Transocean Ltd. Sec. Litig. (No. II)*,
  753 F.Supp.2d 1373 (J.P.M.L. 2010).............................................................11

*In re Transunion Rental Screening Sols., Inc. (TURSS) Fair Credit Reporting Act*
  *(FCRA) Litig.*,
  437 F. Supp. 3d 1377 (J.P.M.L. 2020)....................................................5, 6, 10

*In re Travel Agent Comm'n Antitrust Litig.*,
  290 F. Supp. 2d 1381 (J.P.M.L. 2003)...............................................................7

*In re Urethane Antitrust Litig.*,
  333 F. Supp. 2d 1379 (J.P.M.L. 2004)...............................................................8

*In re Vizio, Inc., Consumer Privacy Litig.*,
  176 F. Supp. 3d 1374 (J.P.M.L 2016)................................................................9

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  290 F. Supp. 2d 1376 (J.P.M.L. 2003)...............................................................8

**Statutes**

15 U.S.C. § 1681 *et seq.*........................................................................1, 3, 4, 5, 11

28 U.S.C. § 1407(a) ..........................................................................................4, 10

**Rules**

Fed. R. Civ. P. 6.2.............................................................................................................1

Defendant Trans Union, LLC ("TransUnion"), by and through its undersigned counsel, respectfully submits this brief in support of its motion pursuant to 28 U.S.C. § 1407 and the United States Judicial Panel on Multidistrict Litigation Rule of Procedure 6.2 for the transfer of certain actions to the United States District Court for the Northern District of Illinois for coordinated or consolidated pretrial proceedings.

## **INTRODUCTION**

Plaintiffs in four different judicial districts have filed ten different cases across the country, each alleging that TransUnion violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA") because it purportedly generated consumer reports containing incorrect information about accounts discharged in bankruptcy (collectively, the "Actions"). More specifically, each Plaintiff alleges that TransUnion incorrectly reported a balance for an account which had been discharged in bankruptcy.[1]

This Panel should transfer and assign the pending Actions listed in the Schedule of Actions – as well as any similar subsequently-filed Actions – to the United States District Court for the Northern District of Illinois because each Action arises from the same substantive factual allegations, involves the same discovery, and asserts nearly identical legal theories of recovery.[2] Each Action is in its earliest stages and discovery has only begun to commence in some of these Actions.

Moreover, the Northern District of Illinois is the most appropriate district within which to consolidate these Actions because it is where their "nexus" is located. The Northern District of Illinois is where TransUnion is headquartered, where many of the alleged events occurred, and

---

[1]    TransUnion disputes that Plaintiffs have stated a cognizable claim for relief in any of the Actions.

[2]    In three of the ten cases, Plaintiffs also have asserted claims against other consumer reporting agencies and furnishers for violation of the FCRA. These claims arise out of the same factual pattern and the complaint filed in each action asserts substantively identical claims against other consumer reporting agencies and furnishers.

where many of TransUnion's documents and witnesses are likely to be located.  Without transfer, TransUnion will be forced to defend itself in a number of different jurisdictions against the same alleged conduct.  Because of the overlap in discovery tailored to determining the factual and legal issues, it is likely that the document discovery to be produced and the witnesses to be deposed will be largely repetitive throughout the Actions.  The Northern District of Illinois, where TransUnion's evidence and witnesses are centralized, is not only the most convenient forum, it is also the most appropriate forum.

## FACTUAL AND PROCEDURAL BACKGROUND

TransUnion is a consumer reporting agency headquartered in Chicago, Illinois.  On June 21, 2022, Plaintiff Kirstie Moore filed a complaint in the United States District Court for the District of Utah alleging that TransUnion violated the FCRA by reporting balances of certain accounts that had been discharged in bankruptcy.  *Moore* Compl. at ¶¶ 36, 41, 45.[3]  Ms. Moore further alleged that TransUnion's reporting of this alleged "derogatory information" was a willful violation of the FCRA.  *See, e.g., Moore* Compl. at ¶ 45.  Ms. Moore seeks statutory damages, punitive damages, and reasonable attorneys' fees.  *Id.* at ¶¶ 72-74.  In the alternative, she seeks actual damages.  *Id.*

Over the course of the next three and a half months, nine other plaintiffs filed nearly identical cases in four different courts located in four different states against TransUnion arising from the same pattern of factual allegations.  *See* Schedule of Actions, attached at Exhibit A.  All but one of these Actions was brought by individual plaintiffs.  One action, *Gray v. TransUnion, LLC,* is a putative class action brought on behalf of "All persons in the United States that have obtained a chapter seven bankruptcy discharge within the last two years and whose consumer

---

[3]   Ms. Moore also asserted claims against the furnishers who allegedly reported the balance of her discharged accounts to TransUnion.  *See Moore* Compl. at ¶¶ 31.

credit report has not been properly updated by [TransUnion] . . . ."  *Gray* Compl. at ¶ 38.

    In each of these ten complaints, the common factual allegations regarding TransUnion's purported reporting of a balance on a debt discharged in bankruptcy are largely indistinguishable and, in some instances, identical.  To that end, each complaint alleges that Plaintiffs' debts were discharged through bankruptcy and that TransUnion subsequently reported the balances of some of those discharged debts.[4]  *See Salzer* Compl. at ¶¶ 48-50 ("Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information it knows is incomplete or inaccurate."); *Wooters* Compl. at ¶¶ 22-23, 65, 82, 99, 117, 133, 150 ("The accounts . . . were discharged through the bankruptcy . . . . However, Defendants either reported or caused to be reported inaccurate information as discussed below after Plaintiff's debts were discharged."); *Moore* Compl. at ¶¶ 34-36, 41, 45, 55, 58 (same); *Wheeler* Compl. at ¶¶ 21-22, 46, 60, 74 (same); *Gray* Compl. at ¶¶ 14-23, 54 (same); *Anderson* Compl. at ¶¶ 9, 18, 26, 34, 54, 63 (same) ("The CRA Defendants failed to report all of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy with a zero-dollar balance."); *Genna* Compl. at ¶¶ 46-47, 57, 59, 69 (same); *Scallion* Compl. at ¶¶ 22-23, 33 (same); *Loughton* Compl. at ¶¶ 21, 38-39, 46, 61-65, 67, 69, 72-72, 81, 84-87, 106-107, 117 (same); *Hansen* Compl. at ¶¶ 27-29, 37-43 (same).

    Plaintiffs' legal theories are also nearly identical, each asserting a claim that TransUnion violated the FCRA when it reported the balance of an account that had been discharged in bankruptcy.[5]  More specifically, each complaint asserts claims under either 15 U.S.C. § 1681e(b)

---

[4]      In some, but not all, instances, the Plaintiff also asserts a claim for the identical conduct against a furnisher or CRA.  *See Hansen* Compl. at ¶¶ 10-13. *Wooters* Compl. at ¶¶ 14-16; *Wheeler* Compl. at ¶¶ 13-15; *Genna* Compl. at ¶¶ 8-21; *Moore* Compl. at ¶¶ 11-16; *Scallion* Compl. at ¶¶ 13-15.

[5]      In some, but not all, instances, the Plaintiff also asserts an identical claim against a furnisher or consumer reporting agency ("CRA").  *See Hansen* Compl. at ¶¶ 10-13. *Wooters* Compl. at ¶¶ 14-16; *Wheeler* Compl. at ¶¶ 13-15; *Genna* Compl. at ¶¶ 8-21; *Moore* Compl. at ¶¶ 11-16; *Scallion* Compl. at ¶¶ 13-15.

or 15 U.S.C. § 1681i.  *See, e.g., Salzer* Compl. at ¶¶ 5, 28, 121-22, 136, 142-43, 149; *Wooters* Compl. at ¶¶ 30, 76, 93, 110, 144, 161; *Wheeler* Compl. at ¶¶ 29, 38, 54, 68, 82; *Gray* Compl. at ¶¶ 26, 54-55, 57; *Genna* Compl. at ¶ 69; *Scallion* Compl. at ¶ 41; *Loughton* Compl. at ¶¶ 21, 43, 98-99, 113, 119-120 (all citing 15 U.S.C. § 1681e(b)).

Last, each Plaintiff alleges that TransUnion willfully violated the FCRA and seeks statutory damages, punitive damages, and reasonable attorneys' fees.  *See Salzer* Compl. at ¶¶ 14, 122, 136, 153, 161; *Wooters* Compl. at ¶¶ 76, 96, 113, 128, 147, 164, 183-86; *Moore* Compl. at ¶¶ 6, 68, 72-73; *Wheeler* Compl. at ¶¶ 43, 57, 71, 85, 118-121; *Gray* Compl. at ¶¶ 6, 18, 57-58; *Anderson* Compl. at ¶¶ 17, 25, 33, 42, 53, 62, 71, 77, 79-81; *Genna* Compl. at ¶¶ 71-72; *Scallion* Compl. at ¶¶ 7, 44, 49-52; *Loughton* Compl. at ¶¶ 12, 99, 113, 124, 132; *Hansen* Compl. at ¶¶ 6, 54, 59-61.

## **ARGUMENT**

Pursuant to 28 U.S.C. §1407(a), transfer is appropriate where, as here: (1) the cases "involv[e] one or more common questions of fact;" (2) transferred and consolidated or coordinated proceedings will further "the convenience of parties and witnesses;" and (3) transferred and consolidated or coordinated proceedings "will promote the just and efficient conduct of [the] actions."  *See In Re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

All Actions involve substantively identical factual allegations and legal issues.  Transfer will benefit the parties, the witnesses, and the courts.  The Actions involve the same types of disclosures, the same allegations of inaccuracy, and similar Plaintiffs.  Further, because TransUnion is located in the Northern District of Illinois, where the events allegedly occurred, and many of TransUnion's documents and witnesses are likely to be located, transfer to that district is most appropriate.  Absent transfer for pretrial proceedings, the parties will incur excessive costs due to duplicative discovery in Hawaii, Nevada, California, and Utah (at a minimum).  The parties also will face the substantial risk of inconsistent rulings as courts in various different districts

grapple with the factual and legal issues raised in the Action.

**I.**      **Transfer is Appropriate Under 28 U.S.C § 1407**

Transfer of the Actions is appropriate and will further the goals of the statute to promote efficiency and consistency.  The statute "was meant to assure uniform and expeditious treatment in the pretrial procedures in multidistrict litigation" and to avoid inconsistent pretrial demands that might "disrupt the functions of the Federal courts."  *In re Phenylpropanolamine Prod. Liab. Litig*., 460 F.3d 1217, 1230 (9th Cir. 2006) (quotation omitted).  Because "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary," this Panel should transfer the Actions to the Northern District of Illinois.  *In re Propecia (Finasteride) Prod. Liab. Litig.*, 856 F. Supp. 2d 1334 (J.P.M.L. 2012).

Centralization of these Actions also is consistent with the Panel's previous decisions involving the FCRA.  *See, e.g.*, *In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.,* 96 F.Supp.3d 1380 (J.P.M.L. 2015) (transferring FCRA cases where only three actions were pending in three districts).  For example, the Panel in *In re Transunion Rental Screening Sols., Inc. (TURSS) Fair Credit Reporting Act (FCRA) Litig.*, 437 F. Supp. 3d 1377, 1377 (J.P.M.L. 2020), consolidated six putative class actions alleging that TransUnion had made various errors in tenant screening reports.  More specifically, prospective tenants alleged that criminal or civil records were misattributed to them and asserted claims under 15 U.S.C. § 1681e(b).  *Id.*

The Panel consolidated the cases, noting that "the actions in this litigation involve common questions of fact, and that centralization [] will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  *Id.*   The Panel also concluded that "centralization will eliminate duplicative discovery; avoid inconsistent pretrial rulings, particularly on class certification; and conserve the resources of the parties, their counsel and the judiciary."

*Id.*

In opposing centralization, the *TURSS* plaintiffs stressed certain differences among the actions and the circumstances in which they arose.  *Id.*  More specifically, the *TURSS* plaintiffs argued that the manner in which the errors in each tenant screening report were made differed from plaintiff to plaintiff.  *Id.*  The Panel squarely rejected this argument:

> All actions share factual questions concerning maintenance and operation of the TURSS database and protocols for determining what public record information is included in its tenant screening reports.  The propriety of TURSS's exclusion of vendor information as a source in its tenant screening reports also is a question common to at least three of the six actions.  Moreover, defendants assert that the information at issue in all actions is stored in the same TURSS databases, so discovery can be expected to overlap to a significant extent.

*Id.* at 1378.

Similarly, each Action here arises from the same fact pattern and alleges that TransUnion improperly reported a balance of a discharged debt in a consumer disclosure.  The overlap of factual questions, legal issues and discovery warrant consolidation and coordination under Section 1407.

### A.    The Actions Involve Identical Factual Issues

The initial test for transfer and coordination under Section 1407 is the presence of similar questions of fact.  *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). This threshold requirement is satisfied where, as here, "two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events…." *In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974).  Importantly, even if there are "differences among the actions in terms of ***named defendants, specific products involved, legal theories of recovery, status as class actions, and/or types of injury alleged***," centralization is still appropriate if the actions remain rooted in complex core questions.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377 (J.P.M.L. 2001) (emphasis added).

6

Here, the alleged conduct underlying the Actions consists of nearly identical factual assertions arising from nearly identical events, namely, that: (1) Plaintiffs filed for bankruptcy; (2) Plaintiffs received an order of discharge of their debts; (3) TransUnion and other CRAs were purportedly aware of the discharge;  (4) TransUnion and other CRAs subsequently failed to report Plaintiffs' dischargeable debts with zero-dollar or blank balances; (5) Plaintiffs discovered this purported inaccuracy; and (6) Plaintiffs were injured as a result of the purported inaccuracy.  The factual questions to be adjudicated will include whether TransUnion and other CRAs' reporting was accurate; whether TransUnion and other CRAs followed reasonable procedures intended to assure the accuracy of its procedures; and whether Plaintiffs were harmed as a result of the alleged report.

The Actions also involve similar legal theories that will require adjudication of whether (1) the document that allegedly had incorrect information was a consumer report as defined by the FCRA; (2) the information reported was "inaccurate"; and (3) whether TransUnion's conduct was willful.  Indeed, all but three of the Actions cite to the exact same section of the FCRA and, even in those where the Plaintiffs cite to different sections of the FCRA, all Plaintiffs seek damages from TransUnion for the *same* alleged conduct and the *same* alleged injury.  While the Panel has held that "Section 1407 requires the existence of common questions of fact, not common questions of law," *In re Air Crash Disaster at Huntington, W. Va. on Nov. 14, 1970*, 342 F. Supp. 1400, 1402 (J.P.M.L. 1972), here, the questions of law are quite common as well.

Any differences in the factual allegations or legal theories of each case are minimal at best and do not negate a finding that transfer is appropriate.  *See In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) ("Section 1407 does not require a complete identity or even [a] majority of common factual and legal issues as a prerequisite to

centralization."); *cf. In re Samsung Top-Load Washing Machine Mktg., Sales Practices and Prods. Liab. Litig.*, 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) (granting motion as to an action that focused on one component of the product in question where the other MDL actions focused on various components of the product).

Nevertheless, Plaintiffs inevitably will contend that there are variations among the Actions which are sufficient to defeat TransUnion's motion.  On the contrary, these variations are minor at best.  For example, although thirteen complaints also assert claims against other defendants, those claims are grounded in the same purported conduct involving the same accounts.  In any event, even where there are "differences among the actions in terms of named defendants, specific products involved, legal theories of recovery, status as class actions, and/or types of injury alleged," cases may be centralized where they are rooted in complex, core questions.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377 (J.P.M.L. 2001) (emphasis added).

The inclusion of other defendants does not preclude coordination because the same type of discovery will be required in each action.  To that end, the Panel has consolidated cases under similar circumstances.  *See, e.g., In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353 (J.P.M.L. 2007) (consolidating twenty-five actions pending in two districts where at least ten different defendants were involved); *In re Pharmastem Therapeutics, Inc., Patent Litigation*, 360 F. Supp. 2d 1362 (J.P.M.L. 2005) (consolidating six actions pending in six districts where six different defendants were involved); *In re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379 (J.P.M.L. 2004) (consolidating sixteen actions pending in seven districts where three different defendants were involved); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 290 F. Supp. 2d 1376 (J.P.M.L. 2003) (consolidating eight actions pending in four districts where six different

defendants were involved); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 273 F. Supp. 2d 1353 (J.P.M.L. 2003) (consolidating forty-six actions pending in six districts where at least nineteen different defendants where involved).

For example, in *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007), the Panel rejected an argument that unique questions of fact relating to each defendant's alleged conduct would predominate over common factual questions among these actions. The Panel emphasized "Transfer under *Section 1407* does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *Id.* It further reasoned that:

> [C]entralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands. The transferee court will be able to formulate a pretrial program that allows any unique discovery in these actions to proceed concurrently on separate tracks with discovery on common issues.

*Id.* This Panel should similarly consolidate and coordinate the Actions.

### B. Transfer Will Serve The Convenience Of The Parties, Witnesses, And Counsel

Centralization under Section 1407 also will "ensure[] that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Lehman Bros. Hldg., Inc.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). Transfer of multiple actions to a single forum prevents duplication of efforts and eliminates the possibility of overlapping or inconsistent determinations by courts of coordinate jurisdiction. *See In re Vizio, Inc., Consumer Privacy Litig.*, 176 F. Supp. 3d 1374, 1375–76 (J.P.M.L 2016)*; In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prods. Liab. Litig.*, 655 F. Supp. 2d 1367 (J.P.M.L. 2009). Consolidating the Actions into a single centralized and coordinated pretrial program will further the statute's goals of fairness and efficiency.

Consolidation will also serve to minimize the inconvenience, inefficiencies, and expense of redundant and duplicative discovery – precisely the purpose of transfer and coordination under Section 1407.  Written discovery, document production and witnesses deposed will undoubtedly be largely identical in each of the Actions.  Transfer to Northern District of Illinois – where TransUnion is headquartered – will be more convenient for the parties, witnesses, and counsel. *See infra* at 13-14.  To the extent that non-parties are also witnesses or possess potentially responsive evidence, coordination and consolidation benefits them, too.  Indeed, without transfer, TransUnion will be forced to defend itself in a number of different courts for the same legal claims arising from the same factual allegations.

### C.      Transfer Will Promote The Just And Efficient Conduct Of The Actions

Transfer of the Actions for coordinated pretrial proceedings also will "promote the just and efficient conduct of [the] actions," satisfying the third requirement of Section 1407(a).  Each Action was commenced within the past five months and are in their early stages.  Thus, consolidation will maximize efficiencies and expedite the resolution of the issues in each case. *See In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (J.P.M.L. 2016) (granting consolidation where nearly all the actions were filed within a six-month period).

The Actions will involve many of the same pretrial issues, such as those concerning the nature and scope of fact discovery, resolution of expert discovery issues and *Daubert* motions, and resolution of legal issues and affirmative defenses at summary judgment.  For example, if all the jurisdictions were independently required to each resolve pre-trial issues relating to the overlapping factual record, valuable judicial resources would be wasted and there would be an exceptionally high risk of inconsistent discovery, summary judgment, class allegation, and certification rulings.  *See In re Transunion Rental Screening Sols., Inc. (TURSS) Fair Credit*

*Reporting Act (FCRA) Litig.*, 437 F. Supp. 3d 1377 (J.P.M.L. 2020) (coordinating and centralizing cases involving violation of the FCRA at 15 U.S.C. § 1681e(b) to "eliminate duplicative discovery; avoid inconsistent pretrial rulings, particularly on class certification; and conserve the resources of the parties, their counsel and the judiciary"); *see also In re Clearview AI, Inc., Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020); *In re Allura Fiber Cement Siding Prods. Liab. Litig.*, 366 F. Supp. 3d 1365 (J.P.M.L. 2019); *In re: Michaels Stores, Inc. Fair Credit Reporting Act (FCRA) Litig.,* 96 F.Supp.3d 1380 (J.P.M.L. 2015); *In re Nickelodeon Consumer Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013) (same).  This outcome would be unfair to both Plaintiffs and TransUnion alike and would burden the court system by creating inefficient procedures and potentially conflicting precedent.

D.    **The Actions Are Sufficiently Numerous And Complex To Warrant Consolidation**

Currently, there are ten federal Actions pending in four states in four separate federal district courts across the country.  There remains the distinct possibility that others will be filed. While there is no "magic number" of pending cases required to grant consolidation under Section 1407, the Actions here involve sufficient number of mutual issues and complexities to warrant consolidation.

As a starting point, the Panel regularly centralizes actions where six or more early-stage actions are pending across multiple jurisdictions.[6]  *See, e.g.*, *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, MDL No. 3040, 2022 WL 3134131 (J.P.M.L. Aug. 3, 2022) (seven actions in four districts); *In re Neo Wireless, LLC, Pat. Litig.*, MDL No. 3034, 2129058 (J.P.M.L. June 14,

---

[6]    "[W]here only a minimal number of actions are involved," a party requesting centralization may bear a heavier burden to demonstrate that it is appropriate.  However, that heavier burden – utilized in limited circumstances with far fewer actions at issue – does not apply here.  *See In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F.Supp.2d 1373, 1374 (J.P.M.L. 2010) (applying heavier burden where there were only two actions); *cf. In re Azek Bldg. Prods.*, 999 F.Supp.2d 1366 (J.P.M.L. 2014) (transferring one case into the District of New Jersey for consolidation).

2022) (seven actions in five districts); *In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prods. Liab. Litig.*, 466 F. Supp. 3d 1380 (J.P.M.L. 2020) (eight actions in eight districts); *In re Clearview AI, Inc. Consumer Privacy Litig.*, 509 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020) (nine actions in two districts); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1363 (J.P.M.L. 2018) (eight actions in four districts); *In re Google Inc. Gmail Litig.*, 936 F. Supp. 2d 1381, 1382 (J.P.M.L. 2013) (six actions in five districts).

Additionally, where, as here, the issues involved are sufficiently complex and centralization would prevent duplicative pretrial proceedings and rulings, the Panel has ordered transfer even when as few as two cases were pending. *See, e.g.*, *In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec. Litig.*, 451 F. Supp. 995, 997 (J.P.M.L. 1978) (centralization was "necessary, even though only two actions are involved, in order to prevent duplicative pretrial proceedings and eliminate the possibility of inconsistent pretrial rulings"); *see also In re Okun*, 609 F. Supp. 2d 1380, 1382 (J.P.M.L. 2009) (centralizing two actions); *In re Payless ShoeSource, Inc*., 609 F. Supp. 2d 1372 (J.P.M.L. 2009) (same); *In re Aetna, Inc*., 609 F. Supp. 2d 1370 (J.P.M.L. 2009) (same).

The Actions involve related factual issues regarding the same statute. The FCRA is a complex statute with significant nuance that governs the heavily regulated field of consumer reporting. The FCRA is increasingly litigated, and courts must adapt and respond to emerging interpretations of its sections and definitions. Here, each action involves a different Plaintiff asserting effectively identical theories against the same defendant regarding the same reporting and there is a risk of inconsistent rulings. The Actions are sufficiently numerous and complex to warrant consolidation.

## II.     The Northern District Of Illinois Is The Most Appropriate Transferee Forum

Because there is a significant nexus to the Northern District of Illinois, the Panel should transfer the Actions there.  A significant "nexus" exists when a party which is common to all actions (*e.g.*, the defendant) is headquartered or has facilities that are located within the transferee court's jurisdiction, such that relevant witnesses and documentary evidence common to all the actions are likely to be found there.  *In re FedLoan Student Loan Servicing Litig.*, 340 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018) (transferring cases to a district "near defendant's headquarters . . . where witnesses and documents [were] likely to be located"); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 325 F. Supp. 3d 1362, 1364 (J.P.M.L. 2018) (transferring cases to the Northern District of California because it is "where Facebook is headquartered and relevant evidence and witnesses are likely to be located"); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) (transferring 97 cases to the Northern District of Georgia because "Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there"); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 148 F. Supp. 3d 1383, 1386 (J.P.M.L. 2015) (transferring cases to the District of Minnesota because "defendants are headquartered in Minnesota, and many witnesses and relevant documents are likely to be found there."); *In re Packaged Seafood Prods. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (transferring cases to defendant's home district because "relevant documents and witnesses are likely to be found there"); *In re Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2015) (transferring to District of Arizona, where defendant was headquartered and documents and witnesses were there); *In re Lenovo Adware Litig.*, 109 F. Supp. 3d 1366, 1367 (J.P.M.L. 2015) (same); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices, & Prod. Liab. Litig.*, 732 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) ("We are persuaded that the Central District of California is an appropriate transferee forum

for this litigation.  Defendants maintain their United States corporate headquarters within this district, and relevant documents and witnesses are likely located there.").  Indeed, it is not required that cases be consolidated to a district where one of the cases is pending.  *See, e.g.*, In re *Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353 (J.P.M.L. 2007) (granting centralization of twenty-five actions pending in two districts – the E.D. of Texas and the District of Delaware – to the Central District of California).

The Northern District of Illinois is the center of gravity for the Actions: it is where TransUnion is headquartered; where many of the witnesses are likely located; and where substantial acts regarding the alleged conduct occurred. The Northern District of Illinois will serve the convenience of the parties and witnesses, and it will promote the just and efficient management of this litigation.  It is the most appropriate transferee court.

## **CONCLUSION**

For all the foregoing reasons, TransUnion respectfully requests that the Panel enter an order consolidating for pretrial proceedings the Actions already filed, as well as any other related actions that are subsequently filed, to the United States District Court for the Northern District of Illinois.


Dated: November 10, 2022             Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: */s/ Samantha L. Southall*
    Samantha L. Southall
50 S. 16th Street, Suite 3200
Philadelphia, Pennsylvania 19102
(215) 665-8700
samantha.southall@bipc.com

*Counsel for Trans Union, LLC*